EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ENRIQUE SUED, acusado y apelante.

No. 3453.—*Sometido:* Febrero 15, 1929. *Resuelto:* Julio 26, 1929.

*C. Domínguez Rubio* y *E. Anglade,* abogados del apelante; *José E. Figueras,* abogado de *El Pueblo,* apelado.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

Al acusado en el presente caso, y a los acusados en otros siete casos, se les imputó una infracción de la ley "proveyendo lo necesario para castigar la adulteración de leche y para otros fines", leyes de 1925, página 559, y apelan de las sentencias que los condenan. Los ocho casos han sido sometidos por un solo alegato de los apelantes y por otro de El Pueblo.

En cada caso, bien cuando la corte preguntó si las partes estaban listas para el juicio, o después de la lectura de la acusación, los letrados del acusado solicitaron que la corte

practicara una investigación con el fin de determinar si se había seguido o no el procedimiento señalado por la sección 6 del Reglamento de Sanidad No. 53, de mayo 10, 1917, como un paso preliminar para radicar la acusación. El asunto de la investigación propuesta caía peculiarmente dentro del conocimiento de los acusados en cada caso, y no se precisaba una investigación para dilucidar los hechos. No se presentó excepción perentoria a la acusación, y no hay motivo alguno sobre qué basar tal excepción. Las cuestiones envueltas en la investigación propuesta eran completamente impertinentes en un proceso por infracción de la ley de 1925. De todos modos, la moción llegó demasiado tarde, por haber sido presentada al empezar el juicio, mucho tiempo después del acto de la lectura de la acusación en que se concedió amplia oportunidad para hacer alegaciones contra ella, y mucho después de que se hiciera la alegación de inocencia.

■ Otra contención suscita la misma cuestión que se presentó y resolvió en el caso de *El Pueblo* v. *Echevarría,* 34 D.P.R. 785, donde esta corte resolvió (según se expresa en el sumario) que: "si para llegar a la conclusión de que la leche está adulterada hay que usar procedimientos que llevan a ese resultado, que no darían otros procedimientos, ello no es obstáculo para concluir que el acusado cometió el delito de adulteración de leche".

■ El tercer motivo de la apelación es que la corte inferior erró al no admitir una carta y ciertos periódicos ofrecidos en evidencia. Los periódicos contenían un aviso respecto a un nuevo grado legal (*standard*) fijado por el Departamento de Sanidad. No fueron admitidos por el fundamento de que una copia certificada de la nueva regla sería la mejor prueba. Los acusados entonces ofrecieron una copia en carbón de una carta dirigida al Comisionado de Sanidad solicitando tal copia certificada. El que escribió la carta declaró que no había recibido contestación a una solicitud similar. Esta evidencia fué ofrecida con el fin de probar la

fecha en que se hizo público el primer aviso sobre el nuevo reglamento. En ausencia de algo que demuestre que esta evidencia era pertinente, el error, de haberse cometido alguno, fué inofensivo.

Otra cuestión se dirige a la admisibilidad de la declaración del Dr. del Valle Sárraga y del informe escrito por él. Esta prueba fué objetada porque el procedimiento seguido al tiempo de su admisión no estaba de conformidad con una orden anterior de la corte disponiendo que se practicaran un examen y un análisis por dos químicos, en presencia del Dr. del Valle como perito en discordia, y exigiendo que se rindiera un informe sobre el resultado. La declaración del Dr. del Valle equivalió a poco más que la identificación del informe y la presentación de una oportunidad para que el acusado le repreguntara. Tal como se rindió, el informe constituía un cumplimiento de la orden anterior con la cual estuvieron conformes los abogados del acusado, y la objeción presentada en un juicio posterior llegó demasiado tarde.

El argumento final de los apelantes es que la evidencia no justificó una convicción.

Se sostiene la teoría de que la leche, aun cuando haya sido diluída, está dentro de ley si el tanto por ciento total de agua contenido en ella no excede el máximo fijado por los reglamentos sanitarios. No podemos estar de acuerdo con este criterio. El delito, tal como lo define el estatuto, es por adulterar o diluir leche, o por tener para la venta u ofrecer en venta, o vender o transportar esa leche. La sección 2 de la ley, leyes de 1925, página 561, dispone que "el grado legal (*standard*) de la leche deberá ser fijado por el Comisionado de Sanidad de Puerto Rico y publicado para conocimiento general en los periódicos de mayor circulación de la Isla que se determinen por dicho funcionario". No se desprende de esto, sin embargo, que la leche esté sin diluir o sin adulterar meramente porque la cantidad de agua agregádale no haga

que el tanto por ciento total de agua contenido en ella rebase el máximo especificado en el grado legal oficial. El fin de la ley es castigar el que se venda, se ofrezca en venta o se tenga para la venta, leche diluída o adulterada, y no autorizar o sancionar el que se venda, se ofrezca en venta o se tenga para la venta leche diluída o adulterada dentro de ciertos límites prescritos.

La contención final de los apelantes es que las conclusiones a que llegó el químico del Gobierno no son dignas de crédito porque se basan en una hipótesis tentativa. La argumentación en cuanto a este extremo descansa en extractos aislados de un enredo de palabras que aparecen en la repregunta. Por medio de cierto proceso químico o de cierto método de análisis, el perito del Gobierno había llegado a la conclusión de que en varios de los casos se había en realidad diluído leche que alcanzaba el grado legal. Así, en un caso en que la leche sólo contenía el 87 por ciento de agua, llegó a la conclusión de que se le había añadido el 9 por ciento de agua. El máximo de agua que el Reglamento de Sanidad permite es el 88 por ciento. Asumiendo que la leche contuviera cierto tanto por ciento de agua antes de ser diluída, el químico, si comprendemos su declaración, trataba de demostrar que la adición de un 9 por ciento de agua daría cierto resultado. Confesó su ignorancia respecto al tanto por ciento exacto de agua contenido en la leche tal como salió de la vaca, e indicó que lo importante no era el estado original de la leche, sino más bien su estado en el momento en que se puso a la venta, según lo reveló el análisis químico. Ese análisis demostró que se le había agregado agua. El tanto por ciento de agua contenido en la leche antes de ser diluída era impertinente. Hubo prueba tendiente a demostrar que el método de análisis empleado era absolutamente seguro. No podemos decir que la corte inferior erró al llegar a la conclusión de que la leche había sido adulterada en cada caso.

*Debe confirmarse la sentencia recurrida.*